(No. 19812

CELIA COGLEY, Appellee, *vs.* JOHN COGLEY, Appellant.

*Opinion filed February 21, 1930.*

WILLIAM E. RAFFERTY, for appellant.

HARRY C. KINNE, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee filed a bill in the superior court of Cook county seeking partition of certain real estate in the city of Chicago described in her bill and known in this record as the Warren avenue property. Appellant answered the bill denying right to partition or ownership of any portion of the property in appellee, and filed a cross-bill seeking to have the ownership of the one-half of the property held by appellee as joint tenant declared a resulting trust for the use and benefit of appellant. Evidence was heard in open court by the chancellor, who granted the prayer of the original bill and dismissed appellant's cross-bill.

There is but little dispute as to the transactions with relation to the various pieces of real estate held by the parties to this proceeding. As to all of them appellant and appellee took title as joint tenants and not as tenants in common. The issue of fact is whether appellee took title

to the real estate as joint tenant in her own right or as trustee under a resulting trust. Appellant's contention is that he furnished the funds with which to pay for the property, and that therefore a resulting trust arose at the time of the transfer of the property.

It appears that on August 11, 1917, these parties went to New York City with the intention of being married. They remained there for a period of about eight days but returned without marrying, though on their return they announced to their friends and relatives that they were man and wife and thereafter lived together as such. Appellee testified that a short time after their return she advanced to appellant the sum of $200, which he loaned to one Anna Metzger, with an agreement on the part of the latter that she would either return the sum of $300 for the money loaned, or, if she did not, would leave her property to these parties by her will. Appellee testified that when she advanced the money to appellant he stated that if he received the Metzger property by will it would be their home. Mrs. Metzger died, leaving appellant by her will certain real estate in the State of Michigan. In December, 1919, this Michigan property was exchanged for property at 4303 Jackson boulevard, in the city of Chicago. The purchase price of the latter property was $8400, subject to a $4000 mortgage. In the transaction the Michigan real estate was taken in at the sum of $1675 and an additional $500 was paid in cash. Appellant and appellee, as husband and wife, gave also a second purchase money mortgage for $2225, and appellee testified that it was agreed they should take the title to the property jointly and that she would continue to work and put her salary into the payment for the building. She testified that this was done. It appears, also, that in 1917 these parties opened a joint account in a Chicago bank in the name of "John J. or Celia Cogley," which was continued for the greater part of the period covered by this controversy. Appellee's evidence

is that after the purchase of the Jackson boulevard property, and during the time they lived in it, she was earning from $18 to $25 per week, all of which she turned over to appellant to apply on the property or placed in their account at the bank. In March, 1923, they sold the Jackson boulevard property for $11,500, subject to a first mortgage of $4000. The purchaser paid $2500 cash and gave a second purchase money mortgage for $5000. This latter mortgage was payable $75 per month, and the evidence is that this money was placed in the joint bank account of these parties. Out of the $2500 cash paid, appellant purchased an automobile, which he took to Michigan and used for some time in a taxicab business. During the next year the balance of the $5000 second mortgage was paid and deposited to the joint account of these parties. In March of that year the parties purchased the Warren avenue property, which is the property in question here. Title was taken in joint tenancy, as had been done with previously owned real estate. The purchase price was $8500, of which $4000 was paid in cash out of the joint account of these parties, $4000 by first mortgage, and according to the testimony of appellee these parties borrowed from one Anna Havlichek the sum of $500 to make up the balance of the cash payment. Appellant testified that Anna Havlichek gave them the money and that it was not borrowed. In view of the fact that she was a young woman working for a living it seems improbable that this would be true. Both she and appellee testified that it was a loan. The evidence shows that both appellant and appellee worked to improve the property and that later they started a rooming house in the premises, after which time appellee took care of the rooms and worked part time at her former employment. From time to time they borrowed money together from one Ferdinand Hoerle, a friend of both of them, for the purpose of making improvements and payment of taxes. Some loans for that purpose were secured

from Hoerle by appellee alone, appellant refusing to join in the notes. During a considerable portion of this time appellant was out of work, and appellee testified that her salary went into the payment of the expenses of maintenance and improvement of the building. They continued to live together as husband and wife. The bill of appellee alleges that by deeding her interest to another and retaking conveyance of it, she, just prior to filing her bill, broke the joint tenancy, and therefore holds an individual one-half interest in the premises as tenant in common.

The issue raised here is as to the intention of these parties at the time appellee took title to a portion of this property. In this the testimony of the parties is in direct conflict. The evidence of at least three witnesses is to the effect that appellant stated that he and appellee owned the property jointly. Appellant in his testimony denied that appellee advanced any money to him to loan to the Metzger woman or that she put any of her earnings into the properties. His testimony is entirely uncorroborated.

Whether a resulting trust arises from transactions between the parties depends upon the intention of the parties at the time of the conveyance. (*Rolofson* v. *Malone,* 315 Ill. 275; *Dodge* v. *Thomas,* 266 id. 76.) One alleging the existence of a resulting trust has the burden of proving the same by clear, definite and unequivocal evidence. (*Rush* v. *Rush,* 304 Ill. 558; *Lord* v. *Reed,* 254 id. 350.) It can not be said, on review of this record, that the burden of so establishing a resulting trust has been met and carried by appellant. The testimony of the witnesses was heard by the chancellor, and a decree entered under such circumstances will not be disturbed unless manifestly against the weight of the evidence. *Kelly* v. *Jones,* 290 Ill. 375; *Kirby* v. *Judy,* 286 id. 200; *Goelz* v. *Goelz,* 157 id. 33.

We are of the opinion that on examining the testimony in this case the chancellor was right in finding the issues for appellee, and the decree is affirmed.

*Decree affirmed.*